UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Berkley Regional Insurance Company, | Case No. 20-cv-2382 (WMW/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| John Doe Battery Manufacturer; Shenzhenshi Yishengda Dianzi Youxian Gongsi; Amazon.com, Inc.; and Shenzhen Maxpower Technology Co., Ltd., | |
| Defendants. | |

---

In this products-liability action, Defendant Amazon.com, Inc. (Amazon), moves for summary judgment and Plaintiff Berkley Regional Insurance Company (Berkley) moves to certify a question to the Minnesota Supreme Court. (Dkts. 70, 76.) For the reasons addressed below, the Court grants Amazon's motion for summary judgment and denies Berkley's motion to certify.

### BACKGROUND

Berkley is an insurance company based in Iowa that conducts business in Minnesota. Schoeneckers, Inc., doing business as BI Worldwide (BI Worldwide), is a Minnesota corporation insured by Berkley. Amazon is a Delaware corporation based in Washington that operates an online marketplace in which third-party retailers sell products including, as relevant here, replacement cell phone batteries.

Berkley provided property and casualty insurance to BI Worldwide effective from September 1, 2018, through July 1, 2019. In November 2018, BI Worldwide employee Rochelle Zappa purchased a replacement cell phone battery on Amazon's online marketplace from Defendant Shenzhenshi Yishengda Dianzi Youxian Gongsi, doing business as Yishda (Yishda). Subsequently, Zappa's cell phone caught fire and damaged BI Worldwide's office. Berkley paid BI Worldwide more than $3 million under BI Worldwide's insurance policy to cover the fire damage.

In July 2019, Berkley commenced this products-liability action against the manufacturer of Zappa's replacement cell phone battery in Minnesota state court. Berkley alleges that the fire at BI Worldwide's office resulted from the defective and unreasonably dangerous condition of the replacement cell phone battery that Zappa purchased. Berkley amended its complaint in October 2020, adding a strict-products-liability claim against Amazon, and Amazon removed the action to this Court in November 2020.

Amazon now moves for summary judgment, arguing that it cannot, as a matter of law, be strictly liable for damages caused by a product that it did not manufacture or sell. Berkley opposes Amazon's motion and cross-moves to certify a question to the Minnesota Supreme Court—namely, whether Amazon may be subject to strict tort liability for a defective product that was purchased on Amazon's website from a third-party merchant, if the product manufacturer is unavailable or unable to satisfy a judgment.

2

## ANALYSIS

### I.   Amazon's Motion for Summary Judgment

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).  When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).  A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Under Minnesota law, "[p]roducts liability is a manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product." *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012) (internal quotation marks and brackets omitted).  "Products liability can be based on a

theory of negligence, strict liability, or breach of warranty." *Id.* (internal quotation marks omitted). The Minnesota Supreme Court has recognized strict tort liability against both the manufacturer of a defective product and the commercial seller of a defective product. *In re Shigellosis Litig.*, 647 N.W.2d 1, 6 (Minn. Ct. App. 2002) (citing *Farr v. Armstrong Rubber Co.*, 179 N.W.2d 64, 68 (Minn. 1970), and *McCormack v. Hankscraft Co.*, 154 N.W.2d 488, 497–98 (Minn. 1967)). Here, it is undisputed that Amazon did not manufacture the allegedly defective battery at issue. Indeed, Berkley alleges only that Amazon "is a commercial seller and/or commercial distributor" of the battery at issue. As such, the only dispute before this Court is whether Amazon may be held strictly liable as a "seller" under Minnesota law.

In *Farr*, the Minnesota Supreme Court relied on the Second Restatement when it recognized that "a commercial seller who sells a product in a defective condition . . . is liable for physical harm to the user caused by the defective condition, even though the seller was not negligent." 179 N.W.2d at 68 (citing *Restatement (Second) of Torts* § 402A). Neither the Second Restatement nor Minnesota courts have defined "commercial seller." But the Second Restatement provides that strict liability applies to anyone "engaged in the business of selling" a defective product, including "any wholesale or retail dealer or distributor." *Restatement (Second) of Torts* § 402A(1)(a) & cmt. f.

The Minnesota Legislature subsequently enacted a "seller's-exception statute," Minn. Stat. § 544.41, that "tempers the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a

4

viable source." *In re Shigellosis Litig.*, 647 N.W.2d at 6 (citing Minn. Stat. § 544.41). Section 544.41 permits the dismissal of strict-liability claims against a passive seller of a defective product in certain circumstances that are not presented in this case. *See id.* But Section 544.41 neither defines "commercial seller" nor expands the scope of strict liability beyond the manufacturer and commercial seller of a defective product. Indeed, the Minnesota Legislature expressly disclaimed any attempt to expand strict liability. *See* Minn. Stat. § 544.41, subdiv. 4 (providing that "[n]othing contained in [Section 544.41] shall be construed to create a cause of action in strict liability in tort or based on other legal theory"). As such, Section 544.41 confirms that Minnesota law limits strict products liability to manufacturers and commercial sellers but provides no guidance as to whether Amazon falls within the scope of the "commercial seller" category.

Minnesota courts "have relied on Restatement (Third) of Torts when considering the law of products liability." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 387 (Minn. Ct. App. 2004), *review denied* (Minn. Aug. 25, 2004). The Third Restatement, consistent with the Second Restatement, provides that anyone "engaged in the business of selling or otherwise distributing" a defective product may be subject to liability for harm caused by the defect. *Id.* (quoting *Restatement (Third) of Torts* § 1). But the Third Restatement, unlike the Second Restatement, expressly defines commercial sale: "One sells a product when, in a commercial context, one transfers ownership thereto either for use or consumption or for resale leading to ultimate use or consumption." *Id.* (quoting

5

*Restatement (Third) of Torts* § 20(a)).[1]  "Sales occur at all levels in the distributive chain including manufacturer sellers, wholesale sellers, and retail sellers." *Restatement (Third) of Torts* § 20(a) cmt. b.  As such, to prove that Amazon is a commercial seller, Berkley must present evidence that Amazon transferred ownership of the allegedly defective battery to Zappa at some point in the chain of distribution as part of a commercial transaction.

Amazon presents evidence that Yishda, the third-party seller of the allegedly defective battery in this case, entered into an Amazon Services Business Solutions Agreement (BSA) with Amazon in April 2016.  The BSA provides that Yishda retained the responsibility to "source, offer, and sell" its products.  Specifically, Yishda retained the responsibility to decide what products to sell, what prices to set for its products, how to package and label its products, how to describe its products on Amazon's online marketplace and whether to offer any warranties as to its products.  Consistent with the BSA, Amazon's website identifies Yishda as the third-party seller throughout the product viewing and ordering process, and Zappa's order identifies the allegedly defective battery she purchased as being "[s]old by: YiSHDA" and "[f]ulfilled by: Amazon."  Customers

---

[1]  When the definition of a word of legal significance is not provided, Minnesota courts "may consider dictionary definitions to determine a word's common usage." *Great N. Ins. Co. v. Honeywell Int'l, Inc.*, 911 N.W.2d 510, 516 (Minn. 2018).  Consistent with the Third Restatement, both the common and legal definitions of "seller" contemplate the transfer of property ownership in exchange for money.  *See* Merriam-Webster's Collegiate Dictionary 1129 (11th ed. 2014) (defining "seller" as "one that offers for sale"); *id.* at 1097 (defining "sale" as "the transfer of ownership of and title to property from one person to another for a price"); Black's Law Dictionary 1567 (10th ed. 2014) (defining "seller" as "[s]omeone who sells or contracts to sell goods" and defining "sell" as "[t]o transfer (property) by sale").

also assent to "Conditions of Use" that, among other things, represent to customers that "[i]f you purchase any of the products or services offered by [other] businesses or individuals, you are purchasing directly from those third parties, not from Amazon." Berkley has not identified any evidence that materially contradicts the foregoing evidence.

Although Yishda retained certain responsibilities as part of the BSA, it is undisputed that Amazon acquired possession of Yishda's products.  Specifically, Amazon provides optional logistics services to some third-party sellers, including Yishda, whereby the third-party seller pays service fees to store its products in Amazon's fulfillment centers.  But as part of the BSA, Yishda represented that it had valid legal title to the products fulfilled by Amazon and, in turn, Amazon agreed that Yishda could request the return of its products at any time.  Nothing in the evidence presented reflects that Amazon acquired title to Yishda's products.

The uncontroverted evidence reflects that Amazon facilitated the transfer of possession of the allegedly defective battery, whereas Yishda transferred ownership of the battery.  Minnesota courts recognize that "products liability theory considers the relationship of the parties in the stream of commerce, not concepts of transfer and possession." *Duxbury*, 681 N.W.2d at 387.  The fact that Amazon transferred possession of the battery is immaterial because the "relevant consideration is whether the defendant is in the business of selling or otherwise distributing a product," and the Third Restatement defines selling a product as "transfer[ring] ownership" of the product.  *Id.* (internal quotation marks omitted).  Significantly, possession is distinct from ownership, as

7

ownership includes the right to convey the property to another. *See* Black's Law Dictionary 1280 (10th ed. 2014) (defining "ownership" as a "bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others;" defining "owner" as "[s]omeone who has the right to possess, use, and convey something;" and defining "own" as "to have legal title to" property); *cf. State v. Evenson*, 554 N.W.2d 409, 411 (Minn. Ct. App. 1996) (recognizing, in the context of criminal liability, that "lawful possession does not require actual title or ownership rights" based on the commonly understood meaning of possession). The record includes no evidence that Amazon ever obtained or transferred an ownership interest in the battery. Consequently, Berkley cannot prove that Amazon was a "seller" of the allegedly defective battery because Yishda—not Amazon—transferred ownership of the product to Zappa.

Relying on *Duxbury*, Berkley argues that a sale of property does not require the transfer of title to the property.[2] Berkley misconstrues *Duxbury*. In *Duxbury*, the

---

[2] Berkley also relies on *State Farm Fire & Cas. Co. v. Homewerks Worldwide, LLC*, in support of this argument. *See* 2017 WL 3469467, at *4–5 (Minn. Ct. App. Aug. 14, 2017). Because *Homewerks* is unpublished, it is non-precedential and has only persuasive value. *See* Minn. Stat. § 480A.08, subdiv. 3(b); *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 999 n.2 (8th Cir. 2021). In *Homewerks*, the Minnesota Court of Appeals held that the plaintiff was not required to prove that the defendant sold the defective product to establish strict liability. *See* 2017 WL 3469467, at *4–5. This holding is consistent with Minnesota law, as a plaintiff can instead prove that the defendant manufactured or otherwise distributed the defective product. But the *Homewerks* court did not undertake a detailed analysis of this issue. The *Homewerks* court did not address Third Restatement's requirements, the holding in *Duxbury* or any of the other Minnesota precedent addressed herein that clearly limits strict-liability claims to manufacturers and sellers. Moreover, the *Homewerks* court expressly declined to address whether the record included sufficient evidence of sale, relying instead on evidence that the product was the defendant's product, the defendant's name was printed on the product and the product had been in the

Minnesota Court of Appeals held that the defendant—"a manufacturer and supplier of animal feed" for "profit"—was "engaged in the business of selling or otherwise distributing animal feed." 681 N.W.2d at 387–88. The defendant argued that it had not sold animal feed to the plaintiff because the plaintiff had retained title to one of the components used to manufacture the feed—namely, corn that the plaintiff had deposited with the defendant. *Id.* at 385. The court rejected this retention-of-title argument because, although the plaintiff retained title to the deposited corn, the plaintiff lost the right to reclaim that corn after directing that the corn be used to make feed. *Id.* at 387. Thereafter, "[c]ompensation [was] required for the goods and services integrated into the finished product," and "title to the feed [was] not transferred until the depositor [paid] this price." *Id.* As such, *Duxbury* does not establish that a sale of property does not require the transfer of title to the property, as Berkley suggests. Moreover, the facts in *Duxbury* are not analogous to the circumstances presented here, as Amazon had no role in manufacturing Yishda's batteries and did not transfer ownership of those batteries. *Duxbury*, therefore, does not support Berkley's position.

Berkley suggests that Amazon may be considered a "distributor" and, therefore, subject to distributor liability. Both the Second Restatement and the Third Restatement reflect that a distributor may be subject to liability. *See Restatement (Second) of Torts* § 402A cmt. f (providing that a person engaged in the business of selling a product includes

---

defendant's control. For these reasons, *Homewerks* is both factually distinguishable and minimally persuasive.

"any . . . distributor"); *Restatement (Third) of Torts* § 1 (providing that anyone "engaged in the business of selling or otherwise distributing" defective products may be subject to liability). The Second Restatement does not define "distributor." But the Third Restatement provides that distributor liability applies to "a commercial transaction *other than a sale*." *Restatement (Third) of Torts* § 20(b) (emphasis added). Here, because it is undisputed that the allegedly defective battery was sold to Zappa through a commercial transaction, this case does not involve "a commercial transaction other than a sale" as required to implicate distributor liability under the Third Restatement.

In addition, the Third Restatement provides that distributor liability applies to "forms of product distribution that are the functional equivalent of product sales." *Restatement (Third) of Torts* § 1 cmt. b. The Third Restatement defines distributors to include "lessors, bailors, and those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity." *Restatement (Third) of Torts* § 20(b). There is no allegation or evidence that Zappa obtained the battery at issue here through a lease or bailment of the product. The Third Restatement explains that distributor liability also may apply to a defendant that gives away or lends products as a means of commercial promotion—for example, free samples, promotional giveaways or vehicle test drives. *Id.* at cmts. b, f. But here, the evidence does not suggest that Amazon gave or lent the battery to Zappa as a means of commercial promotion. To the contrary, the evidence establishes that the Amazon did *not* have the right to give away or lend Yishda's products to customers under the BSA.

10

Moreover, the Third Restatement expressly excludes from liability "product distribution facilitators," providing that anyone "assisting or providing services to product distributors, while indirectly facilitating the commercial distribution of products, [is] not subject to liability." *Id.* § 20 cmt. g.  Such distribution facilitators include, for example, entities "engaged in advertising products" or "engaged exclusively in the financing of product sale or lease transactions." *Id.*  Here, the record reflects that Amazon provided services to third-party sellers such as Yishda, including access to an online storefront, payment processing services and fulfillment services.  But in doing so, Amazon did *not* assume responsibility for sourcing, pricing, packaging, labeling, describing or warranting the quality or functionality of Yishda's products.  *Cf. Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1163–64 (D. Minn. 2011) (concluding that defendant was not merely a service provider because, when conveying the defective product, defendant provided its own instructions for using the product, removed the original manufacturer's labels, provided a warranty as to the functionality of the product and represented to customers that, "legally and practically, we are the manufacturers" of the product).  The uncontroverted evidence demonstrates that Amazon only indirectly facilitated the distribution of Yishda's products through the provision of services, which falls outside the scope of distributor liability.

11

Several unpublished Minnesota state court decisions support the foregoing analysis.[3] In *Lyzhoft v. Waconia Farm Supply*, the Minnesota Court of Appeals declined to extend strict liability to the bailor of an allegedly defective propane cylinder and observed that "no Minnesota appellate court has extended strict liability to commercial bailors, lessors, or both." 2013 WL 3368832, at *3–4 (Minn. Ct. App. July 8, 2013). In *Tabish v. Target Corp.*, the Minnesota Court of Appeals held that a company that assembled a defective bicycle was a service provider that "falls outside of the traditional strict-liability scope" because "strict-liability claims are enforceable only against manufacturers, suppliers, and sellers of products." 2011 WL 2519209, at *6 (Minn. Ct. App. June 27, 2011). And in *Bremer v. Forklifts of Minnesota, Inc.*, the Hennepin County District Court, Fourth Judicial District, dismissed strict-liability claims against an entity that inspected and modified an allegedly defective forklift but did not sell the forklift. 2015 WL 3512409, at *6 (Minn. Dist. Ct. May 6, 2015). Although none of these decisions involved an online marketplace such as the one operated by Amazon, these decisions reflect that Minnesota courts narrowly construe the scope of strict products liability.

In summary, under Minnesota law, strict products liability applies only to manufacturers and sellers of defective products. Amazon undisputedly did not

---

[3]   Under Minnesota law, unpublished decisions "must not be cited as precedent." Minn. Stat. § 480A.08, subdiv. 3(b). "However, when interpreting state law, if the highest state court has not decided an issue [a federal court] must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." *Cent. Specialties*, 18 F.4th at 999 n.2 (recognizing that unpublished Minnesota Court of Appeals decisions may be cited as persuasive authority when attempting to predict how the Minnesota Supreme Court would resolve an issue of first impression).

manufacture the allegedly defective battery in this case. The uncontroverted evidence does not demonstrate that Amazon either sold the battery through a transfer of ownership or otherwise distributed the battery based on how those terms have been defined and described in the Second Restatement, the Third Restatement and the decisions of Minnesota courts. Rather, the evidence reflects that Amazon acted as a distribution facilitator, which the Third Restatement expressly exempts from strict liability. For these reasons, the Court grants Amazon's motion for summary judgment.

## II. Berkley's Motion to Certify Question to the Minnesota Supreme Court

Berkley argues that, in lieu of ruling on Amazon's motion for summary judgment, this Court should certify the following question to the Minnesota Supreme Court:

> Under Minnesota law, is an e-commerce business like Amazon subject to strict liability in tort for a defective product purchased on Amazon's website from a third-party merchant, at least in situations where the product manufacturer is unavailable or unable to satisfy a judgment and Amazon provided services through its [Fulfilled By Amazon] program?

Berkley contends that this Court should delay ruling on Amazon's motion for summary judgment until after the Minnesota Supreme Court responds to the foregoing question.

The Minnesota Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn. Stat. § 480.065, subd. 3. Whether to use a state's certification procedure is within a federal district court's discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974); *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881–82 (8th

13

Cir. 1996). Although certification might "save time, energy, and resources and help[ ] build a cooperative judicial federalism," certification is never required, even if state law is in doubt. *Lehman Bros.*, 416 U.S. at 390–91. "Absent a close question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it." *Smith v. SEECO, Inc.*, 922 F.3d 406, 412 (8th Cir. 2019) (internal quotation marks omitted). The "most important consideration" when deciding whether to certify a question to a state supreme court is whether the certifying court "finds itself genuinely uncertain about a question of state law." *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (quotation omitted).

It is undisputed that Minnesota courts have not addressed the precise issue presented here—namely, whether the operator of an online marketplace may be subject to strict liability for harm caused by a defective product sold by a third-party merchant. But for the reasons addressed in Part I of this Order, the available sources of state law enable this Court to reach a "nonconjectural determination" as to this issue. *Smith*, 922 F.3d at 412 (internal quotation marks omitted). These sources include precedential decisions from Minnesota courts demonstrating the scope of strict liability and the appropriate reliance on the Second Restatement and Third Restatement and the text and commentary provided in the Second Restatement and the Third Restatement. These sources also include persuasive authority from unpublished Minnesota state court decisions, together with Minnesota statutory authority, which demonstrate that Minnesota courts narrowly construe the scope of strict products liability as applied to non-manufacturers. Although these state-law sources do

not address the precise issue presented in this case, these sources provide sufficient guidance to enable this Court "to reach a sound decision without indulging in speculation or conjecture." *Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 938 F.2d 90, 93 (8th Cir. 1991). There is not a dearth of legal authority such that this Court is left "genuinely uncertain about a question of state law." *Johnson*, 935 F.2d at 153 (quotation omitted).

Accordingly, the Court denies Berkley's motion to certify a question to the Minnesota Supreme Court.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Amazon.com, Inc.'s motion for summary judgment, (Dkt. 70), is **GRANTED**.

2. Plaintiff Berkley Regional Insurance Company's motion to certify a question to the Minnesota Supreme Court, (Dkt. 76), is **DENIED**.


Dated: January 24, 2023

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge